**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **C.F. and M.F., individually and on behalf of their daughter V.F.,** *Plaintiffs*, <br><br> v. <br><br> **COUNCIL ROCK SCHOOL DISTRICT,** *Defendant*. | **Civil No. 24-402** |

**MEMORANDUM**

Costello, J.                                                                                                       **June 22, 2026**

V.F., a child with autism, a speech impairment, and Cortical Visual Impairment

("CVI"),[1] received special education services from Defendant Council Rock School District.

C.F. and M.F., on behalf of V.F. (the "Plaintiffs"), filed a due process complaint with the

Pennsylvania Office of Dispute Resolution ("ODR") contending that Defendant did not provide

V.F. a free and appropriate public education ("FAPE") in the least restrictive environment as

required by the Individuals with Disabilities in Education Act ("IDEA").  Plaintiffs also alleged

that this failure violated the Rehabilitation Act ("RA") and the Americans with Disabilities Act

("ADA").  After ODR conducted a due process hearing, Plaintiffs filed this Complaint

contending that the Hearing Officer erred when he found that V.F. was mostly afforded a FAPE

during the 2020-21 and 2021-22 school years.  Because Plaintiffs have not shown that the

Hearing Officer erred, the Court will deny Plaintiffs' Motion for Summary Judgment and for

Judgment on the Administrative Record and grant Defendant's Motion for Summary Judgment.

---

[1]        CVI is an impairment that impacts the way the brain processes information it receives from the eyes.  *See Cerebral Visual Impairment*, NAT'L EYE INST., https://www.nei.nih.gov/eye-health-information/eye-conditions-and-diseases/cerebral-visual-impairment-cvi (last modified Dec. 4, 2024).

## I.    BACKGROUND[2]

### A.    The IDEA

The IDEA requires any school district that receives federal education funding to provide disabled children in their charge with a "free appropriate public education, commonly referred to as a FAPE." *Perkiomen Valley Sch. Dist. v. S.D. ex rel J.D.*, 405 F. Supp. 3d 620, 624 (E.D. Pa. 2019) (quoting 20 U.S.C. § 1412(a)(1)).  "A FAPE consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *T.R. v. Sch. Dist. of Phila.*, 223 F. Supp. 3d 321, 324 (E.D. Pa. 2016) (internal citation omitted).  To deliver a FAPE, school districts design and administer "a program of individualized instruction for each special education student set forth in an [IEP]." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010).  "The IEP is the 'centerpiece' of the IDEA and the 'primary vehicle' for implementing the congressional policy underlying the Act." *T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 183 (3d Cir. 2021) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

"An IEP consists of a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet these goals, and a timetable for

---

[2]    Before a court can consider the merits of a case, it must establish its jurisdiction.  *See In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997).  A district court has subject matter jurisdiction over an IDEA claim when a party exhausts its claims at a due process hearing.  *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994); 20 U.S.C. § 1415(i)(2)(A)).  For a court to have jurisdiction over RA and ADA claims that seek the same relief as an IDEA claim, the aggrieved party must have raised those issues in the underlying due process hearing.  *Id.* at 272-76; *M.S. v. Marple Newtown Sch. Dist.*, 635 F. App'x 69, 72 (3d Cir. 2015).  The Court has jurisdiction over Plaintiffs' claims because they litigated those claims at the due process hearing.  *See* ECF No. 31 (due process complaint); ECF No. 17-4 at 3 (stating that whether V.F. was denied a FAPE during the 2020-23 school years was at issue in the due process hearing).

reaching the goals by way of the services." *D.S.*, 602 F.3d at 557 (internal citation omitted). The

IEP should provide "an educational program reasonably calculated to enable a child to make

progress appropriate in light of the child's circumstances." *K.D. ex rel Dunn v. Downingtown*

*Area Sch. Dist.*, 904 F.3d 248, 250-51 (3d Cir. 2018) (citing *Endrew F. ex rel. Joseph F. v.*

*Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 403 (2017)). While progress can be incremental,

"a meaningful educational benefit must be more than *de minimis*." *Perkiomen Valley Sch. Dist.*,

405 F. Supp. 3d at 629 (citing *Endrew F.*, 580 U.S. at 402-03).

### B.     Facts[3]

V.F. is a child who is disabled under the IDEA. ECF No. 17-4 ¶ 1. In 2019, before

entering kindergarten, V.F. received an IDEA evaluation. ECF No. 17-6. This evaluation found

that V.F. was intellectually disabled due to autism and that she had a secondary disability of a

speech or language impairment. *Id.* at 29; *see also* ECF No. 17-4 ¶ 1. V.F. was also diagnosed

with CVI. ECF No. 17-4 ¶ 2.

During the 2020-21 school year, V.F. was placed in an Autistic Support ("AS")

classroom. *Id.* ¶ 7. V.F.'s teacher during the 2020-21 school year had a master's degree in

special education and was a board-certified behavioral analyst. *Id.* ¶ 10. V.F.'s teacher was also

trained in trauma-informed practices and in methods to de-escalate externalizing behaviors. *Id.*

V.F. received instruction in the AS classroom as well as in a general education classroom. *Id.* ¶

25.

During the 2020-21 school year, V.F. was educated pursuant to an IEP drafted on May

27, 2020. *Id.* ¶ 26. The 2020-21 IEP (the "2020 IEP") contained "numerous Specially Designed

---

[3]     The Court finds no reason to depart from the factual findings of the Hearing Officer and adopts those findings. *See* ECF No. 17-4 ¶¶ 1-61.

Instruction (SDI)[4] and program modifications, including Physical Therapy (PT), Occupational Therapy (OT), and Community Based Instruction (CBI)." *Id.* ¶ 28.  Her 2020 IEP included several functional and academic goals.  *Id.* ¶ 27.  The 2020 IEP contained twenty-one SDIs to help V.F. achieve these goals.  ECF No. 17-7 at 31-32.

Although the 2020 IEP noted that V.F. displayed numerous problematic behaviors, the IEP did not include a Positive Behavior Support Plan ("PBSP")[5] to address these behaviors. ECF No. 17-4 ¶¶ 31-32.  Overall, V.F.'s teachers and aides perceived that her behaviors were improving throughout the 2020-21 school year, although Defendant did not systematically collect data about V.F.'s behaviors.  *Id.* ¶ 35.

V.F.'s IEP team met on May 4, 2021 to draft a new IEP.  *Id.* ¶ 36.  Prior to receiving this IEP, V.F. received a "one-to-seven" re-evaluation, which consisted of consideration of the first seven questions of the formal re-evaluation report, along with information provided by related service providers, general and special education teachers, the parents, and the school psychologist.  ECF No. 17-5 at 322-23; 890:19-894:16.  The school district officials determined that no further data was needed, which meant that the one-to-seven review became the re-evaluation report.  *Id.* at 891:14-19.

However, the Hearing Officer found that this records review could not be considered an evaluation under the IDEA because there was no "significant document trail between the parties

---

[4]    SDI is the manner in which a school district "adapt[s], as appropriate to the needs of an eligible child under this part, the content, methodology, or delivery of instruction . . . (i) To address the unique needs of the child that result from the child's disability; and (ii) To ensure access of the child to the general curriculum" so that the child can meet the same educational standards as nondisabled children.  34 C.F.R. § 300.39(b)(3).

[5]    A PBSP is a plan for students "who require specific intervention to address behavior that interferes with learning."  22 Pa. Code § 14.133(b).  The plan must be developed by the IEP team and "be based on a functional behavioral assessment."  *Id.*

as to what was done to reach the conclusion that no additional evaluations were necessary, what was sent to the parents in that regard and what the parents signed at that point." *Id.* at 850-51. Because this information was not disclosed during the due process hearing, the Hearing Officer made an adverse finding that the 2021-22 IEP (the "2021 IEP") was not based on a current evaluation. *Id.* at 844-51.

The 2021 IEP maintained V.F.'s placement in the AS classroom and provided the same amount of therapy as the 2020 IEP. ECF No. 17-4 ¶¶ 37-38. It included some of the same goals from the 2020 IEP, toward which V.F. had made mixed progress, and added new functional and academic goals. *Id.* ¶¶ 39-50. Like the 2020 IEP, the 2021 IEP included numerous SDI and program modifications. *Id.* ¶ 51. This IEP included thirty-seven SDIs to help V.F. achieve her IEP goals. ECF No. 17-11 at 28-30. Unlike the 2020 IEP, the 2021 IEP included a PBSP to address V.F.'s behaviors. ECF No. 17-4 ¶ 52.

During the 2021-22 school year V.F.'s AS teacher changed. *Id.* ¶ 54. Her new AS teacher was trained in Applied Behavior Analysis ("ABA") strategies. *Id.* V.F.'s daily schedule during the 2021-22 school year was substantively similar to her schedule in the prior year, including her participation in the general education classroom. *Id.* ¶ 57. V.F. made mixed progress toward her IEP goals during the 2021-22 school year. *Id.* ¶ 60. While V.F.'s "noncompliant behaviors" decreased during the 2021-22 school year, it was impossible to discern whether this was due to Defendant's interventions, a change in V.F.'s medications, or a combination of the two. *Id.* ¶ 61. Despite the decrease, V.F.'s "noncompliant behaviors" remained problematic. *Id.*

V.F. remained a student at the School Defendant for a portion of the 2022-23 school year. ECF No. 17-4 ¶¶ 62-67, 69-70.  Eventually, C.F. and M.F. decided to remove V.F. from the school district.  *Id.* ¶¶ 72, 78-92.

### C.  Procedural History

Plaintiffs filed a due process complaint on November 21, 2022.  ECF No. 17-4 ¶ 80; ECF No. 31.  After a hearing, the Hearing Officer found that Defendant mostly afforded V.F. a FAPE during the 2020-21 and 2021-22 school years.  ECF No. 17-4 at 27-29.  Defendant fell somewhat short because it failed to provide a written PBSP to address V.F.'s behavioral issues during the 2020-21 school year.  *Id.* at 27-28 (finding that while the "IEP was appropriate in every other way," the omission of a PBSP "constitutes a substantive violation of the Student's right to a FAPE").  Otherwise, the Hearing Officer found that Plaintiffs did not present preponderant evidence that Defendant failed to provide V.F. with a FAPE during the 2020-21 and 2021-22 school years.  *Id.* at 27-29.  Because Defendant fell slightly short of providing a FAPE during the 2020-21 school year, and because of other issues not relevant here, the Hearing Officer awarded Plaintiffs 237.6 hours of compensatory education.  *Id.* at 32-33; ECF No. 17-1 at 36.  Plaintiffs filed this lawsuit challenging the Hearing Officer's decision.  ECF No. 1.

## II.  LEGAL STANDARDS

### A.  IDEA Standard of Review

When reviewing a hearing officer's decision in an IDEA case, "district courts apply a modified *de novo* standard of review."  *Montgomery Cty. Intermediate Unit No. 23 v. A.F.*, 506 F. Supp. 3d 293, 302 (E.D. Pa. 2020) (quoting *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012)).  This means that the Court must afford "'due weight' to the findings in the administrative proceeding (also known as a 'due process hearing' in IDEA parlance)."  *Id.* at 302

(quoting *D.S.*, 602 F.3d at 564). "'Due weight' means that '[f]actual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why.'" *Id.* at 302-03 (internal citation omitted).

When "a district court reviews administrative fact finding without hearing additional evidence, it is 'required to defer to the ALJ's factual findings unless it can point to contrary nontestimonial extrinsic evidence in the record.'" *A.L. v. Howell Tp. Bd. of Educ.*, 24cv234, 2025 WL 517841, at *4 (D.N.J. Feb. 18, 2025) (citing *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)). This "deferential standard" ensures "that federal courts do not impose their own 'view of preferable educational methods on the states.'" *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Ctrl. Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982)). The credibility determinations of the hearing officer are accepted "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." *A.F.*, 506 F. Supp. 3d at 303. District courts review the legal findings of the hearing officer on a plenary basis. *Id.* The party challenging the decision bears the burden of persuasion. *Id.*

**B.      Standard of Review Governing RA and ADA Claims Raised Below**

A court must perform a separate RA analysis, "even if based upon the same facts as the IDEA claim, unless the parties do not present evidence 'unique to the . . . [RA] claim.'" *E.W ex rel M.B. v. Wilson Sch. Dist.*, 25cv2904, 2026 WL 442425, at *12 (E.D. Pa. Feb. 17, 2026) (quoting *B.S.M. v. Upper Darby Sch. Dist.*, 103 F.4th 956, 964-65 (3d Cir. 2024)) (further citation omitted). Unlike IDEA claims, RA and ADA claims raised in a due process hearing are subject to *de novo* review. *Id.* at *12 (citing *Le Pape v. Lower Merion Sch. Dist.*, 103 F.4th 966, 976 n.4, 983 (3d Cir. 2024)). This *de novo* review requires the Court to evaluate the record just

as it would on a motion for summary judgment. *See id.* at \*8, \*18-19 (conducting summary judgment review of plaintiff's RA and ADA claims after performing modified *de novo* review of IDEA claims). A plaintiff's failure to establish a substantive IDEA violation is sufficient to decide a motion for summary judgment on the RA and ADA claims. *See id.* at \*12.

## IV.   DISCUSSION

Plaintiffs have moved for summary judgment and for judgment on the administrative record. Plaintiffs seek to overturn the Hearing Officer's finding that V.F. was mostly provided a FAPE during the 2020-21 and 2021-22 school years. Plaintiffs contend that V.F.'s IEP was deficient for three central reasons. First, V.F.'s 2021 IEP was not based on an up-to-date evaluation and V.F.'s 2019 evaluation was fundamentally flawed because it did not consider her CVI diagnosis. ECF No. 18-3 at 8-15. Second, the content and implementation of V.F.'s IEPs were not sufficient to deliver a meaningful educational benefit. *Id.* at 15-26. Third, Defendant did not provide a FAPE to V.F. in the least restrictive environment. *Id.* at 26-30. Plaintiffs also challenge the Hearing Officer's decision that Defendant complied with the requirements of the RA and the ADA. *Id.* at 31-32. Plaintiffs' RA and ADA claims arise out of the same facts as V.F.'s IDEA claims and seek the same relief. ECF No. 1 ¶¶ 93-94. Finally, Plaintiffs argue that because the Hearing Officer awarded compensatory education, Plaintiffs should be afforded leave to file for attorneys' fees. ECF No. 18-3 at 30.

By contrast, Defendant has moved for summary judgment and seeks to affirm the decision of the Hearing Officer. Defendant contends that the Hearing Officer's decision was correct because V.F. was mostly afforded a FAPE during the 2020-21 and 2021-22 school years. Defendant argues that aside from the lack of behavioral interventions in the 2020 IEP, V.F. was otherwise afforded a FAPE. ECF No. 17-1 at 13-33. Defendant further argues that Plaintiffs are

not prevailing parties in the due process hearing because the amount of compensatory education awarded by the Hearing Officer is not enough to materially alter the legal relationship between the parties. *Id.* at 35-37. The Court will take each argument in turn.

### A.    The Hearing Officer's Findings

Plaintiffs' appeal is premised on the faulty notion that the Court may freely re-evaluate the Hearing Officer's factual findings and credibility determinations. This is incorrect. The modified *de novo* standard constrains the Court's review of the factual record in this case. *See S.H.*, 336 F.3d at 269-70. Unless Plaintiffs present extrinsic non-testimonial evidence refuting the factual findings of the Hearing Officer or demonstrate that a reading of the record in its entirety compels a different conclusion, this Court is bound to defer to the Hearing Officer's construction of the record. *Id.* at 269-70; *Aponte v. Pottstown Sch. Dist.*, 842 F. App'x 806, 807 (3d Cir. 2021). Plaintiffs have not carried their burden.

Plaintiffs rely on the opinions and testimony of experts they presented at the due process hearing, namely, Dr. Christine Roman, Dr. Gerald Costa, and Dr. Katherine Vroman. ECF No. 18-1 ¶¶ 19-36, 39-47 (Dr. Roman's opinion that V.F.'s CVI should have factored more heavily in Defendant's evaluation and implementation of V.F.'s IEP); 50 (opinion of Dr. Vroman as to the impropriety of the CBI offered to V.F.); 119-21 (opinion of Dr. Vroman that V.F. could have benefited from "assistive technology and materials [made] . . . accessible to her as a student with CVI" and that she could have benefitted from "an intervener trained to make accommodations for students with visual impairment"); 194-203 (opinion of Dr. Costa that use of ABA methods for behavior management was improper). As detailed below, the Hearing Officer found that these experts were either not credible or offered testimony that was not probative of the issues before him.

9

The Hearing Officer afforded Dr. Costa's report no weight because Dr. Costa "had never met the student, never observed the student, knew nothing about the district's program, and could almost say nothing specific to the student." ECF No. 17-4 at 22-23. Because Plaintiffs have not shown through extrinsic non-testimonial evidence that the Hearing Officer erred in according Dr. Costa's opinion no weight, the Court defers to the Hearing Officer's finding. *See A.F.*, 506 F. Supp. 3d at 302-03.

The Hearing Officer also found that Dr. Roman's report was generally unremarkable when it came to "actionable, concrete educational recommendations." ECF No. 17-4 at 22. As will be discussed in greater detail below, Plaintiffs have not met their burden to establish why Dr. Roman's opinion should be afforded any more weight than the Hearing Officer afforded it.

The Hearing Officer found Dr. Vroman's testimony credible. *Id.* However, her only relevant testimony was that V.F. should not have had "cleaning tables" as an instructional goal in her 2021 IEP. ECF No. 17-5 at 27; 101:5-20. Dr. Vroman also testified that the 2022-23 IEP ("2022 IEP") could be modified to further integrate V.F. into the general education curriculum. *Id.* at 22, 26; 79:6-25, 95:25-98:13. Plaintiffs do not establish how this testimony from Dr. Vroman regarding V.F.'s 2022 IEP could establish that the IEPs created and implemented during the 2020-21 and 2021-22 school years were improper. Therefore, Dr. Vroman's testimony is of limited probative value to the issues on appeal here.

As is discussed in greater detail below, the Court finds that the Hearing Officer's factual finding that V.F. was mostly afforded a FAPE during the 2020-21 and 2021-22 school years should be afforded due weight.

### 1.   V.F.'s Evaluations

Plaintiffs contend that V.F.'s 2020 and 2021 IEPs were based on inappropriate evaluations for two reasons.  First, Plaintiffs argue that Defendant failed to re-evaluate V.F.'s abilities before developing the 2021 IEP.  Second, Plaintiffs argue that Defendant failed to properly classify V.F. as having CVI and therefore failed to plan for that condition in her IEPs.

Students with intellectual disabilities must be re-evaluated at least every two years.  *Z.B. v. Chambersburg Area Sch. Dist.*, 20cv2313, 2023 WL 11998740, at *6 n.8 (M.D. Pa. Jan. 24, 2023) (citing 22 Pa. Code § 14.124(c)).  A school district's failure to conduct timely evaluations, by itself, is a procedural violation of the IDEA.  *Id.* at *20 & n.35 (collecting cases).  Generally, the remedy for a procedural violation of the IDEA is "injunctive relief for prospective compliance."  *See C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010) (internal citation omitted).  However, procedural violations that rise to the "level of a denial of a FAPE[] entitl[e] the plaintiff to compensatory education."  *Id.*  To rise to this level, a procedural violation must cause "substantive harm to the child or his parents."  *Id.* "Substantive harm occurs only if the preponderance of the evidence" demonstrates the procedural violation: 1) "impeded the child's right to a" FAPE, 2) significantly limited the parents' opportunity to participate in the IEP process[6], or 3) "caused a deprivation of [] educational benefit[s]."  *Id.* at 67 (quoting 34 C.F.R. § 300.513(a)(2)).

Because Plaintiffs are solely seeking compensatory education, they must show that Defendant's procedural violation either impeded V.F.'s right to a FAPE or deprived V.F. of educational benefits.  As the Hearing Officer stated in the due process hearing, V.F.'s 2021 IEP

---

[6]     Plaintiffs do not argue that V.F.'s parents were deprived of the opportunity to participate in the IEP creation process.

was not based on a formal re-evaluation.  ECF No. 17-5 at 311-12; 844:1-851:23.  However, the Hearing Officer did not find that this deficiency denied V.F. a FAPE.  Plaintiffs do not explain with extrinsic non-testimonial evidence how the lack of a formal re-evaluation in 2021 either impeded V.F.'s receipt of a FAPE, contrary to the Hearing Officer's finding, or deprived her of educational benefits.  As a result, Plaintiffs have not carried their burden.  *E.W.*, 2026 WL 442425, at *13-14 (finding that district's failure to re-evaluate student did not result in a loss of educational opportunity, seriously deprive parents of their participation rights, or cause a deprivation of educational benefits).

Plaintiffs next argue that Defendant's evaluation of V.F. was flawed because CVI should have been V.F.'s principal disability diagnosis and should have been considered throughout the evaluation process.  Plaintiffs further contend that V.F.'s lack of progress should have alerted the Defendant to the fact that they were not evaluating her disability accurately.  *See* ECF No. 18-3 at 8-15.

These arguments fail because they rely almost exclusively on the testimony of Dr. Roman.  *See* ECF No. 18-1 ¶¶ 24, 39-44, 46-47 (citing to testimony and recommendations of Dr. Roman); *see also* ECF No. 17-5 at 451; 1260:18-1261:11 (Dr. Roman's testimony that it is impossible to determine the IQ of a child with CVI because no test has been standardized to account for a pediatric CVI diagnosis).  The Hearing Officer declined to make an explicit credibility finding regarding Dr. Roman.  Instead, he stated it was not his role to resolve "an ongoing dispute between [Dr. Roman], the medical community, and the special education community."  ECF No. 17-4 at 22.  Despite refusing to make a credibility determination, the Hearing Officer characterized Dr. Roman's report as "unremarkable" with respect to "actionable, concrete educational recommendations."  *Id.*  Plaintiffs provide no extrinsic non-testimonial

12

evidence to suggest that this Court should afford more weight to Dr. Roman's opinion than the Hearing Officer did. *See generally* ECF No. 18-3. Therefore, the Court defers to the Hearing Officer's opinion regarding the weight to be afforded to Dr. Roman's testimony. *See A.F.*, 506 F. Supp. 3d at 303.

Additionally, the evidence before the Hearing Officer showed that Defendant did in fact consider V.F.'s CVI diagnosis in crafting her IEPs between 2020-22. Ms. Maria Baldwin, V.F.'s teacher of students with Visual Impairments ("TVI") during the 2019-20 and 2020-21 school years, confirmed that Defendant assumed V.F. had CVI and accordingly provided visual accommodations for her. ECF No. 17-5 at 315, 320-21; 861:17-19, 882:24-885:22. Further, the 2020 IEP mentions CVI as a contributing factor to V.F.'s behavioral issues and includes steps that Defendant took to address these behaviors. ECF No. 17-11 at 10.

Plaintiffs also contend that the present levels of academic and functional performance in V.F.'s IEPs are unreliable because: 1) there was no change between these sections in the 2020 and 2021 IEPs, and 2) the IEPs do not reference any assessments to establish these levels. ECF No. 18-3 at 15-16. Plaintiffs' arguments are contradicted by the IEPs themselves. Although a few of the areas on the 2020 and 2021 IEPs share similar language with respect to some functions, a comparison shows that V.F. made progress in name identification, receptive/expressive language, her behaviors, and other areas. *Compare* ECF No. 17-7 at 8-10 (2020 IEP) *with* ECF No. 17-11 at 7-9 (2021 IEP). In addition, the members of the IEP teams for both IEPs provided detailed observations of V.F.'s conduct in various areas. ECF 17-7 at 10-12; ECF No. 17-11 at 9-11. Although some information was carried over from year-to-year, some of the IEP team members' evaluations significantly changed. *Compare* ECF No. 17-7 at

11 (TVI observation noted nystagmus diagnosis) *with* ECF No. 17-11 at 9-10 (TVI noted V.F.'s other visual diagnoses including ADNP and nystagmus).

Plaintiffs have failed to offer sufficient evidence justifying a departure from the Hearing Officer's determination regarding the evaluation of V.F.'s IEP.  The Court therefore agrees with the Hearing Officer's finding that Plaintiffs failed to raise preponderant evidence that any error with V.F.'s evaluations deprived her of a FAPE.

####  2.  V.F.'s IEP

Plaintiffs contend that V.F.'s IEPs contained inappropriate content and were not properly implemented because: 1) V.F. received an inappropriately shortened school day, 2) Defendant's data lacks integrity and reliability, 3) Defendant's program for V.F. did not lead to progress, and 4) V.F. was denied the educational benefit of effective instruction.

As to the first argument, Plaintiffs argue that the decision to have V.F. leave early during the school day was made outside the IEP process.  Because of this, they contend that no evaluation was carried out to determine whether V.F., in fact, needed a shortened school day. Plaintiff's argument fails because they do not point to any extrinsic non-testimonial evidence that V.F.'s shortened school day led to the deprivation of a FAPE.

Contrary to Plaintiffs' argument, V.F.'s shortened school days were noted throughout her IEPs.  *See* ECF No. 17-11 at 7 (noting that V.F. finished school day at 2:45 in 2021); ECF No. 17-7 at 8 (noting that V.F. was in school until 2:30 prior to COVID lockdowns).  Moreover, V.F.'s mother agreed to V.F.'s 2020 and 2021 IEPs.  ECF No. 17-5 at 142; 427:12-24; ECF No. 17-5 at 330; 921-26 (V.F.'s kindergarten teacher explaining that V.F. had a shortened day due to fatigue and that she regularly discussed with her parents a plan to ramp up the length of V.F.'s school day).  Plaintiffs identify no evidence suggesting that the shortened school day was

anything other than the product of an agreement between the parents and the Defendant within the IEP process.

Plaintiffs' second and third arguments fail for three connected reasons. First, the preponderant evidence does not support Plaintiffs' assertion that Defendant's data lacked integrity and reliability. Plaintiffs created two charts based on available raw data regarding the classroom tasks that V.F. was to perform throughout the 2021-22 school year. Plaintiffs complain that fourteen of the thirty-four data points on the chart provided by Defendant have no supporting data. ECF No. 18-2 at 40. Plaintiffs' charts demonstrate some inconsistencies in tracking that are not present on the progress reports that Defendant generated. *Id.* at 40-41. However, based on a comparison of Plaintiffs' chart with Defendant's comparable data, it appears that there is no significant difference. *Compare* ECF No. 17-13 at 4 (Defendant's progress report depicting V.F.'s performance with task) *with* ECF No. 18-2 at 40-41 (Plaintiffs' chart indicating inconsistencies between what the Defendant reported in the progress report and what the underlying data depicted).

Second, any tracking failures that may have occurred here were not dispositive of whether V.F. received a FAPE. The Hearing Officer considered IEP progress reports showing that Defendant monitored V.F.'s progress on a consistent basis. *See* ECF No. 17-10 (providing regular progress reports about IEP goals throughout 2020 and 2021); ECF No. 17-13 (providing regular progress reports about IEP goals throughout 2021 and 2022). "While regular monitoring of a student's progress towards IEP goals may aid in ensuring that student's achievement of measurable progress over an academic year, a 'sub par' progress monitoring scheme does not necessarily imply an inadequate FAPE." *Coleman v. Pottstown Sch. Dist.*, 983 F. Supp. 2d 543, 573 (E.D. Pa. 2013) (citing *I.H. v. Cumberland Valley Sch. Dist.*, No. 11cv574, 2012 WL

2979038, at *11 (M.D. Pa. July 20, 2012)).  An inadequate monitoring regime would deny a student a FAPE only if the IEP team is unable to understand the student's progress and consequently is unable to determine whether a student is making any progress at all.  *See Elena M. ex rel Hans M. v. Sch. Dist. of Phila.*, 22cv4767, 2025 WL 968310, at *9-10 (E.D. Pa. Mar. 31, 2025).  While the Plaintiffs have shown Defendant's monitoring of V.F.'s performance in one of her IEP goals was not perfect, they do not establish how this singular failure was indicative of an overall tracking failure like the one in *Elena M.*[7]  They also do not explain how these tracking failures show that the decisions in creating the 2021 IEP, or the decision to not revise V.F.'s IEP prior to May 2021, were unreasonable at the time they were made or that Defendant did not implement a substantial or significant part of the IEP.

Third, contrary to Plaintiffs' argument, V.F. made sufficient progress toward her goals to satisfy the IDEA's requirements.  In his factual findings, the Hearing Officer compared the 2020 and 2021 IEPs and found that V.F.'s progress toward the IEP goals was mixed.  ECF No. 17-4 ¶¶ 37-48; 60.  He found the same to be true of the Defendant's progress in controlling V.F.'s behaviors although he generally noted that V.F.'s negative behaviors had decreased over the course of the year.  *Id.* ¶ 61; ECF No. 17-15 at 1.  That V.F. made only mixed progress does not mean that V.F. was deprived of a FAPE.  "[M]ixed results do not equate to a lack of progress." *See, e.g., N.M. ex rel. W.M. v. Central Bucks Sch. Dist.*, 992 F. Supp. 2d 452, 467-68 (E.D. Pa. 2014).  Based on her IEPs, V.F. made more than *de minimis* progress, which is sufficient to comply with the IDEA.  ECF No. 17-4 ¶¶ 40-49.

---

[7]    Plaintiffs produced other charts which claim to rectify tracking issues during the 2021-22 school year.  However, unlike the charts previously discussed, Plaintiffs provide no factual basis as to what data Plaintiffs used to generate these charts.  *See* ECF No. 18-2 at 35-37.  Therefore, their probative value regarding the tracking issues is limited.

16

As to the fourth argument, Plaintiffs point to the testimony of V.F.'s home aide and V.F.'s mother, describing observations of the AS classroom during a few discrete, one-hour sessions, during the 2021-22 school year.  The home aide testified that when she came to observe the class, V.F. did very little substantive course work and that 99% of the time the teacher had the students watch YouTube videos.  ECF No. 17-5 at 62; 239:7-240:18.  C.F., V.F.'s mother, testified that different grades were combined in the same classroom, that no curriculum was employed in the classroom, and that V.F. did not have a textbook or receive homework.  ECF No. 18-1 ¶¶ 161, 163.

The Hearing Officer did not agree with the evidence the Plaintiffs presented and credited the testimony of V.F.'s teachers who were present in the classroom daily.  ECF No. 17-4 ¶¶ 25, 57 (finding that V.F. received instruction in the AS classroom and in the general education classroom during the 2020-21 and 2021-22 school years); *id.* at 27, 29 (stating that claims not discussed in opinion were not supported by the preponderant evidence).  Because Plaintiffs do not offer non-testimonial extrinsic evidence to challenge the Hearing Officer's credibility determination, the Court defers to the Hearing Officer's finding that V.F. received regular academic instruction while in the AS classroom.  *See M.G. v. North Hunterdon-Voorhees Reg'l High Sch. Dist. Bd. of Educ.* 778 F. App'x 107, 110-11 (3d Cir. 2019).[8]

Based on the foregoing, the Court agrees with the factual determination made by the Hearing Officer that V.F. was mostly afforded a FAPE during the 2020-21 and 2021-22 school years.

---

[8]     Plaintiffs have not demonstrated that Defendant failed to implement V.F.'s IEPs.  *See Abigail P. ex rel Sarah F. v. Old Forge Sch. Dist.*, 105 F.4th 57, 65 (3d Cir. 2024) (citation omitted) (emphasis in original) (holding that a school district fails to implement an IEP only if it "failed to implement *substantial or significant provisions* of the IEP").

**B.      Least Restrictive Environment**

A school district must place a disabled child "in the least restrictive environment that will provide a 'meaningful educational benefit.'" *Montgomery Cnty. Intermediate Unit No. 23 v. K.S. ex rel K.S.*, 546 F. Supp. 3d 385, 395 (E.D. Pa. 2021) (quoting *T.R. v. Kingwood Tp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000)).  The IDEA's least restrictive environment requirement, also known as "mainstreaming," *T.R.*, 205 F.3d at 578, is a separate substantive requirement of the IDEA.  *See J.C. v. Upper Darby Sch. Dist.*, 20cv5030, 2022 WL 17324587, at *13 (E.D. Pa. Nov. 29, 2022) (collecting cases).  To sufficiently mainstream a student, a school district must "'to the greatest extent possible, satisfactorily educate [disabled children] . . . together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." *K.S.*, 546 F. Supp. 3d at 396 (quoting *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 390 (3d Cir. 2006)) (further citation omitted).  Whether a student is sufficiently mainstreamed is a fact question.  *See A.G. ex rel. S.G. v. Wissahickon Sch. Dist.*, 374 F. App'x 330, 333-34 (3d Cir. 2010).

To determine whether a school district has sufficiently mainstreamed a student, the Court considers two separate questions.  "First, the court must determine whether education in the regular classroom, with the use of supplementary aids and services, can be achieved satisfactorily." *J.C.*, 2022 WL 17324587, at *12 (quoting *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1215 (3d Cir. 1993)).  "Second, if the court finds that placement outside of a regular classroom is necessary for the child to benefit educationally, then the court must decide whether the school has mainstreamed the child to the maximum extent appropriate, i.e., whether the school has made efforts to include the child in school programs with nondisabled children whenever possible." *Id.* To determine whether a party has satisfied the first part of the *Oberti* test, courts consider three

18

elements: "(1) the steps the school district has taken to accommodate the child in a regular classroom; (2) the child's ability to receive an educational benefit from regular education; and (3) the effect the disabled child's presence has on the regular classroom." *T.R.*, 205 F.3d at 579 (citing *Oberti*, 995 F.2d at 1215-17).

Plaintiffs contend that Defendant failed to consider whether V.F. could have been accommodated in a regular classroom during the 2020-21 and 2021-22 school years and identify four types of services that Defendant should have provided to effectively mainstream V.F.[9] Plaintiffs conclude that Defendant failed to provide staff adequately trained in special education. ECF No. 18-3 at 28. In his findings, the Hearing Officer noted that V.F.'s autistic support teacher and aides during the 2020-21 and 2021-22 school years were trained in a variety of special education methods and practices including ABA[10] strategies and behavioral de-escalation tactics. ECF No. 17-4 ¶¶ 10, 54-55. Because Plaintiffs have not cited any evidence to contradict the Hearing Officer's factual findings regarding the training of V.F.'s teachers and aides, the Court accords his finding due weight.

The Plaintiffs contend that Defendant could have hired consultants to help train V.F.'s teachers and modify V.F.'s curriculum so that it could be closer to the general education curriculum. In support of this, they cite the testimony of Ms. Christy Hearn, V.F.'s AS teacher in the second grade, who confirmed that while the IEP team had considered incorporating V.F. further into the general education curriculum, the team ultimately rejected the idea. ECF No. 17-

---

[9]     Plaintiffs agree that V.F. was receiving sufficient paraprofessional support to properly integrate her into the regular educational curriculum. Therefore, the Court will only discuss the deficiencies that Plaintiffs raise.

[10]     Plaintiffs also challenge the use of ABA strategies in managing V.F.'s behaviors. But as explained above this challenge is factually unsupported because the only evidence they marshal in support of this contention came from Dr. Costa, whose testimony and report the Hearing Officer afforded no weight.

5 at 383; 1132-34. Ms. Hearn did not remember the specifics of the conversation at the IEP team meeting as to what supplementary aids and services Defendant considered before ultimately deciding to maintain V.F.'s placement. *Id.* However, Ms. Hearn's lack of recollection as to why the IEP team ultimately decided to maintain V.F.'s placement in the AS classroom or what other services and aids they considered during the creation of the 2021 IEP is not evidence that Defendant failed to consider whether V.F. could be incorporated into a regular education classroom.

Finally, Plaintiffs fault the delay in implementing a PBSP until the 2021 IEP. Again, Plaintiffs fail to cite any extrinsic non-testimonial evidence to establish how the PBSP, although implemented late, was based on an inappropriate assessment or otherwise insufficient.

Plaintiffs do not advance any evidence as to the remaining elements of the first part of the *Oberti* test. The Court thus affords due weight to the Hearing Officer's findings and agrees with him that Plaintiffs have failed to establish by preponderant evidence that V.F. was not mainstreamed to the greatest extent possible. ECF No. 17-4 at 27, 29.

Plaintiffs do not address the second part of the *Oberti* test, whether Defendant made efforts to incorporate V.F. with her non-disabled peers despite the need to educate her in the AS classroom. As the Hearing Officer found, Defendant did so. ECF No. 17-4 ¶¶ 25, 57; ECF No. 17-5 at 329; 918:3-7 (during the first grade, V.F. participated in gym, music, art and library to the extent that she could tolerate it); 355; 1021:2-20 (during the second grade, V.F. completed art projects with her general education peers). Therefore, the Court finds that V.F. was sufficiently mainstreamed during the 2020-21 and 2021-22 school years.

### C.    Plaintiffs' RA and ADA Claims

"Section 504 of the Rehabilitation Act provides that ' '[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination' under any program that receives federal funds.'" *E.W.*, 2026 WL 442425, at *11 (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 280 (3d Cir. 2012)) (further citation omitted).  To establish an RA violation a plaintiff must show "(1) the child was disabled; (2) the child was 'otherwise qualified to participate in school activities;' (3) the school district received 'federal financial assistance;' and (4) the child was 'excluded from participation in, denied the benefits of, or subject to discrimination' by the district." *Id.*

There "are few differences, if any, between [the] IDEA's affirmative duty and [Section] 504's negative prohibition . . . [and the Third Circuit has] noted that the regulations implementing [Section] 504 require that school districts 'provide a free appropriate education to each qualified handicapped person in [its] jurisdiction.'" *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) (internal citation omitted).  Therefore, "a finding that a student received a FAPE under the IDEA 'is equally dispositive' of a Section 504 claim." *E.W.*, 2026 WL 442425, at *12 (quoting *D.K.*, 696 F.3d at 253 n.8).

"The same standards govern both Section 504 and ADA discrimination claims." *Id.* at *12 n.13 (citing *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)).  To state an ADA claim a plaintiff must prove that "(1) she 'has a disability, or was regarded as having a disability,' (2) she 'was 'otherwise qualified' to participate in school activities,' and (3) she was 'denied the benefits of the program or was otherwise subject to

21

discrimination because of [her] disability.'" *Id.* (quoting *D.E. v. Central Dauphin Sch. Dist.*, 765

F.3d 260, 269 (3d Cir. 2014)) (further citation omitted).

Plaintiffs argue that Defendant must prove that it was educationally necessary to remove

V.F. from the regular education curriculum. ECF No. 18-3 at 31-32. Plaintiffs contend that

Defendant cannot meet this showing because of the lack of educational opportunity afforded by

the AS classroom. *Id.* This argument fails because, as discussed above, *supra* at 19-20,

Defendant provided V.F. with a FAPE in the least restrictive environment. Because Plaintiffs

have not provided additional evidence to distinguish their IDEA mainstreaming claim from their

RA or ADA claims, the finding that Defendant complied with the IDEA is sufficient to deny

Plaintiffs' motion for summary judgment. *See E.W.*, 2026 WL 442425, at *18 (citing *J.M.*, 39

F.4th at 147) (when a court confirms that a school district provided student with a FAPE under

the IDEA, and moving party presents no additional evidence to establish RA or ADA

discrimination, then no additional analysis is needed).[11]

### D.    Prevailing Parties

A court can award attorneys' fees to "a prevailing party who is the parent of a child with

a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). A "prevailing party is one who 'succeed[s] on any

significant issue in litigation which achieves some of the benefit the parties sought in bringing

suit." *D.F. v. Collingswood Borough Bd. Of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012) (citation

omitted). To make this determination courts use a two-prong test: "First, 'whether plaintiffs

achieved relief,' and second, 'whether there is a causal connection between the litigation and the

---

[11]    Defendant has not specifically opposed this portion of Plaintiffs' motion. *See* ECF No. 17-1, 20. Despite this, it is the moving party's burden to establish that there is no genuine dispute of material fact by either citing specific evidence in support of that point or by showing that the materials cited do not show a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). Plaintiffs have not done so here.

relief from the defendant.'" *Id.* (internal citation omitted). To satisfy the first prong, a party does not need to obtain all the relief they sought, nor "must the plaintiff ultimately win the case." *Id.* (internal citation omitted). "To satisfy the second prong . . . a plaintiff must show that litigation 'was a material contributing factor in bringing about the events that resulted in obtaining the desired relief.'" *Id.* (internal citation omitted).

Plaintiffs are prevailing parties because they secured 237.6 hours of compensatory education. *See, e.g., M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 230 (3d Cir. 2017) (award of compensatory education is sufficient to confer prevailing party status). Therefore, the Court grants Plaintiffs' motion for prevailing party status and affords Plaintiffs leave to file a motion for attorneys' fees.

## V.   CONCLUSION

The Court will deny Plaintiffs' Motion for Summary Judgment and for Judgment on the Administrative Record and grant Defendant's Motion for Summary Judgment. Plaintiffs have failed to meet their burden in challenging the Hearing Officer's findings. Accordingly, the Court sustains the Hearing Officer's determination that V.F. was mostly afforded a FAPE in the least restrictive environment during the 2020-21 and 2021-22 school years. Nonetheless, because Plaintiffs obtained some compensatory education at the due process hearing based on the omission of a PBSP in the 2020 IEP, Plaintiffs may file a motion for attorneys' fees.

An appropriate Order follows.

BY THE COURT:

_____
MARY KAY COSTELLO, J.

23